Rosaleen LYNCH, Plaintiff,

v.

CONSOLIDATED RAIL CORPORATION
and National Railroad Passenger
Corporation, Defendants.

No. 77 CIV. 934(MP).

United States District Court,
S. D. New York.

Sept. 1, 1977.

Joseph Lloyd Barnett, New York City, for plaintiff.

Bleakley, Platt, Schmidt & Fritz, New York City, for defendants; by Robert L. Conkling, Robert P. Shaughnessy, and Christopher G. FitzPatrick, New York City, of counsel.

## DECISION

POLLACK, District Judge.

This is a diversity case heard at a Bench trial. Plaintiff claims that she was injured through negligence of defendants on a train platform at defendants' Pennsylvania Station in New York City while attempting to board Train No. 223, a commuter train scheduled to depart at 5:32 P.M., on September 10, 1976, a Friday afternoon, bound for Philadelphia.

At about 5:00 P.M., it was announced that the scheduled departure of the 5:10 P.M. Train No. 210, the Philadelphia Express, would be delayed.

At about 5:25 P.M., the announcement was made that the 5:32 P.M. commuter train to Philadelphia was ready for boarding on Track 11. Passengers in the waiting room who were waiting for the express train headed for Track 11 to join those

leaving on the commuter train for Philadelphia.*

Plaintiff and her daughter joined the passengers headed for the gate to Track 11, went through the gate and descended the stairway to the platform adjacent to Track 11. Plaintiff's description of the situation at the time was couched in the language to be found in the New York case authorities, namely, that the crowd headed for the train "surged", "pushed" and "jostled" so that "she did not have means of her own locomotion" and "was unable to control her movement." She testified that after she reached the platform she passed one car door of the train and, following her daughter, she continued on to a second car door and proceeded to board the train at that point. She testified that she was pushed from behind by a person or persons not identified and apparently unknown and was caused to lose her balance and allegedly was precipitated into the space between the station platform and the train platform, going down into that space with both feet and up to her thighs. She claims that she saw no one representing the railroad on the platform or at the trainside to keep order and control. Her daughter had boarded without incident immediately ahead of plaintiff and turning around noted her mother's plight. A trainman and two or three passengers assisted plaintiff to her feet and the trainman asked her or her daughter whether plaintiff wanted an ambulance. Her daughter said yes, that they wanted an ambulance.

The 5:32 P.M. train left Penn Station on time and within a minute or two after the occurrence of the mishap to the plaintiff. No one was left behind at the station other than the plaintiff and her daughter; all other passengers got aboard without incident in time for the train to pull out.

The plaintiff and her daughter were left standing alone on the platform after the train pulled out; plaintiff limped over to a stairway where she waited until a station policeman came down to escort them to an office in the station where plaintiff made a statement of the accident. Shortly thereafter an ambulance attendant arrived and the plaintiff and her daughter walked out to the ambulance and were taken to the emergency room at French Hospital. Plaintiff was x-rayed and examined and after a few hours was released and went home. Her family doctor came to see her on Sunday; he recommended that she see an orthopedist which she did on September 30, 1976, and from time to time thereafter.

The defendants' evidence was to the effect that the train carried a crew of seven, i. e., a conductor and six trainmen, one of whom was stationed at the entrance of each car of the train to assist passengers to board. There were two or three extras that afternoon to handle the crowd. It was further testified that it was routine practise for the station master to place an usher at the top of the stairs leading from the waiting room of the station to the platform and one at the bottom of the stairs and one or two others on the platform. The defendants' witness did not know of his own knowledge that the practise described had been followed on the Friday of the accident. The defendant was unable to identify those who were on location on this Friday afternoon due in part to a change in the control of the railroad on October 1, 1976. The train conductor testified that there was a substantial crowd on the platform on this Friday afternoon and that the crowd had all gotten aboard the train in time and that he, having been stationed near the front of the train, had not in fact seen the accident but that it was reported to him by one of the trainmen who came to him and said that the matter was being handled by the station master. After receiving this information, the conductor signaled for the "all aboard" clearance from the several trainmen and receiving it he had closed the doors of the train.

The plaintiff was 66 years of age at the time of the accident and had for some years

---

* Train No. 221, the 5:10 P.M. express to Philadelphia, actually left Penn Station at 5:50 P.M. from Track No. 9.

suffered from high blood pressure in the range of 185 over 100. She had also been suffering from degenerative osteo-arthritis in both knees and more particularly in the left knee for which she had received medical treatments before the accident. Her doctor had prescribed medicines for her arthritis and hypertension, and she had been taking diuril, a diuretic and anti-hypertensive, aldomet, a drug to control high blood pressure, and valium, a drug administered for nervousness. The plaintiff is of good size and about 30 pounds overweight. She retired from active work in a secretarial capacity about a year before the accident.

The claimed injuries sustained from the accident are basically an aggravation of the prior conditions from which the plaintiff admittedly was suffering. She claims additionally to have sustained severe fascial tears in the side of the right thigh with hematoma and ecchymosis; aggravation of her pre-existing arthritic condition of her knees, scrapes and bruises to both knees, sprain of her cervical spine and lumbar sprain of her right shoulder, aggravation and exacerbation of pre-existing hypertension, contusions and abrasions of the right wrist, thigh, legs, abdominal wall muscles, shoulders and spine and pain and suffering and mental anguish. She claims that the injuries have restricted her movements and require her to wear knee cages and to walk with a cane. She mentions having incurred hospital and medical expenses but these were not established in the evidence in any satisfactory manner. The evidence failed to substantiate the degree of injury or aggravation of prior conditions claimed and the claims appeared to have been unfounded or grossly exaggerated.

■■■ There is no question that the plaintiff was a prospective passenger on defendants' trains. She had purchased tickets at the station and met her daughter there. The tickets were marked in evidence. The law is well settled that the measure of duty of a carrier, in a station or on a platform, is that of ordinary, reasonable care. Overcrowding, without more, is not negligence in and of itself under New York law which is the law applicable to this case. The burden of proof that the plaintiff must sustain requires a credible showing that the crowd was so large and so unmanageable that a user was restricted in his free movements or was unable to find a safe standing place. The accident occurred during a rush hour on a Friday afternoon before a weekend, and a delayed express train had resulted in adding persons seeking to board the available commuter train. The plaintiff's daughter and all the other passengers who reached the platform had descended the stairs, walked on the platform and entered the train without incident. The platform was cleared by the time the train pulled out which was only about two minutes after the occurrence and precisely at the time of its scheduled departure. The credible evidence is that the space between the train platform and the station platform is about six inches, yet the plaintiff, a heavy set woman with limbs of substantial circumference claims to have gone down into such a space with both feet (she wears size eight and a half shoe) to a point above her knees and up to her thighs—a somewhat remarkable feat to accomplish considering the dimension of the space.

No witnesses to the accident or the manner thereof or what actually occurred were produced. The trainman and the two or three passengers who purportedly assisted plaintiff to her feet were not identified or produced by either side. Judging the credibility of the plaintiff's version of the accident and the proximate cause of her injuries by the surrounding facts and circumstances and especially considering the degree to which her general credibility was impaired by the motion picture evidence of her actual physical condition and activities taken by an investigator within a week of the trial, the Court cannot with any degree of confidence accept as worthy of belief her version of the accident, of the place of its occurrence and of the proximate cause of her injuries.

If indeed the situation was accurately described, it would be reasonable to assume that such an accident would have delayed

the train departure for some time at least—yet the train left on time, one or two minutes later.

The sequelae of the accident claimed by the plaintiff were plainly exaggerated to a substantial degree. It was shown by motion pictures that within the week before the trial the plaintiff went marketing several blocks from her home, ascended and descended bus transportation, carried without the use of her cane a sizeable bag of groceries she had purchased while wheeling a shopping cart and had walked on the streets of the area in which she resides without any apparent difficulty. The plaintiff admitted to her physician that she does her own housework and has no pain from walking.

The changes in plaintiff's condition before and since the accident do not seem to be in fact remarkable or have been aggravated by the mishap according to the medical proofs. The temporary effects such as hematoma and ecchymosis suffered from the accident were mostly cosmetic. According to the defendants' doctor no fundamental aggravation of her existing physical conditions are traceable to the accident.

■ An accident from the unexpected push of other passengers or an unidentified person or even an unexpected movement of a crowd seeking to board a car of a train does not cast a carrier in liability. The plaintiff in this class of cases has the burden which this plaintiff failed to carry by a fair preponderance of credible evidence to show that excessive crowding on the platform was a proximate cause of her injuries. That connection was not established credibly. Plaintiff was not prevented from or hindered in reaching the gate from which to descend to the platform, or from walking down the stairs, or from walking beyond the door of one car of the train and to the door of a second car of the train. Her daughter and other passengers boarded without incident. Her daughter, testifying as a witness did not indicate that her power of locomotion was impeded or that the platform crowd was unruly or that there was no way to proceed safely. Plaintiff's description of the accident shows conclusively that it must have been caused by the intervening act of an unidentified person or persons who collided with her; that she sustained some sort of a fall; and that the overcrowding per se was not the proximate cause of the accident. The evidence is suggestive of the interpretation that plaintiff tripped somehow from inconsiderate and unexpected conduct of those seeking to board the train.

■ A trainman had been stationed at the open door of each car to admit passengers and to assist them to board. There was no showing that the failure to have more persons stationed on the platform would have prevented the occurrence or that the defendants failed to do what was reasonably necessary to assure plaintiff's safety. It is undeniable that there were safe means of boarding the train despite the rush hour crowd; everyone but the plaintiff had boarded in that way and on time. It cannot be said in this case that the defendants failed to act reasonably or in the absence of reasonable care in the circumstances and under the conditions prevailing at the time. In short, the plaintiff failed to establish by a fair preponderance of credible evidence that negligence of the defendants was the proximate cause of the accident. It is unfortunate that an accident occurred but the defendants were not insurers of the plaintiff's safety in boarding the train and can only be held liable if they were at fault.

Under the circumstances, the complaint herein must be and hereby is dismissed. *See Ryan v. City of New York,* 7 A.D.2d 298, 182 N.Y.2d 616 (1st Dept. 1959), *aff'd* 6 N.Y.2d 896, 190 N.Y.S.2d 705, 160 N.E.2d 924 (1959); *Cross v. Murray, as Receiver,* 260 App.Div. 1030, 24 N.Y.2d 500 (2d Dept. 1940); *Angrisani v. New York Central R. R.,* 22 A.D.2d 666, c. 7, 253 N.Y.S.2d 403 (1st Dept. 1964); *Pilch v. Pennsylvania R. R. Co.,* 245 F.2d 76 (2d Cir. 1957).

The foregoing shall constitute the findings of fact and conclusions of law required by Rule 52(a) Federal Rules of Civil Procedure.

SO ORDERED.