Eleanor M. STAGL, Plaintiff–Appellant,

v.

DELTA AIRLINES, INC.,
Defendant–Appellee.

No. 423, Docket 94–7295.

United States Court of Appeals,
Second Circuit.

Argued Oct. 12, 1994.

Decided April 17, 1995.

Benjamin Greshin (Greshin, Zeigler & Pruzansky, Smithtown, NY), for appellant.

Marguerite D. Peck (Downing & Mehrtens, P.C., New York City), for appellee.

Before: NEWMAN, Chief Judge, WALKER and CALABRESI, Circuit Judges.

CALABRESI, Circuit Judge:

If a man chooses to leave a cart standing in the street, he must take the risk of any mischief that may be done. *Illidge v. Goodwin*, 5 Carrington & Payne's Reports 190 (1831).

In the one hundred and sixty-four years since Chief Justice Tindal of the English Court of Common Pleas first set down this rule of tort liability, our means of transportation have advanced considerably. Nevertheless, the rule's basic premise, that a tortfeasor is liable for the foreseeable acts of an intervening party, remains sound in our modern age of aeronautics. Indeed, as this case in part demonstrates, the concept of intervening causation may apply equally well to the "mischief" engendered by an unattended airport baggage carousel as it does to a neglected horse and wagon.

Plaintiff, Eleanor M. Stagl, appeals from a judgment of the United States District Court for the Eastern District of New York (the Honorable John R. Bartels, *Senior District Judge*), granting summary judgment to defendant, Delta Air Lines, Inc., and dismissing her personal injury action against Delta which was based upon the airline's alleged negligent supervision and management of its baggage retrieval system. *See Stagl v. Delta Air Lines, Inc.*, 849 F.Supp. 179, 184–85 (E.D.N.Y.1994). Mrs. Stagl also appeals from the district court's denial of her cross-motion to compel Delta to provide discovery relating to similar injuries that allegedly have occurred at or near other Delta baggage carousels. *Id.* at 185. Because we agree with Mrs. Stagl that the district judge erroneously granted Delta's motion and denied her cross-motion, we reverse the judgment and remand the case for further proceedings.

## BACKGROUND

On May 1, 1993, Mrs. Stagl, then 77 years old, was a passenger on a Delta flight from Orlando, Florida to LaGuardia Airport in New York City. The plane was delayed for approximately one-half hour, and Mrs. Stagl noted that upon its arrival in New York the passengers were visibly upset. After disembarking from the aircraft, Mrs. Stagl proceeded to a designated baggage carousel lo-

cated in Delta's terminal in order to retrieve her luggage.

In her affidavit in opposition to Delta's motion for summary judgment, Mrs. Stagl describes the Delta terminal as "bedlam." According to her, "[p]eople were crowded around the baggage carousel and everyone seemed in a hurry to get out of the airport." Moreover, they were "rowdy and unruly, pushing and shoving each other, grabbing their luggage from the moving carousel by whatever means possible." She further claims that Delta did not provide any personnel, or make any cautionary announcement to quell the turmoil; nor did the airline cordon-off a separate area in which elderly and disabled passengers could safely obtain their luggage.

In an attempt to reclaim her own belongings, Mrs. Stagl made her way to the "front rank" of the throng surrounding the baggage carousel. Apparently, an unidentified man to one side of her reached across the conveyor belt, grabbed his satchel with great force, and unwittingly triggered a domino effect. His bag collided with another's suitcase, which, in turn, fell off the carousel, toppling Mrs. Stagl. As a result, she suffered a broken hip.

Mrs. Stagl brought this diversity action in the district court, claiming that Delta did not exercise reasonable care to ensure her safety. She complained that the airline negligently failed to take any crowd-control measures or to provide a safe method by which elderly and disabled people could retrieve their luggage. Mrs. Stagl alleged that her physical injuries were the proximate result of Delta's inaction.

During discovery, a representative of the airline stated that there had been other, similar accidents at Delta baggage terminals. Delta refused, however, to respond to Mrs. Stagl's subsequent request for information regarding accidents of like kind that had occurred at or near Delta baggage carousels, and at a pretrial conference the district judge declined to require Delta to give such information. Delta then moved for summary judgment on the grounds that the Airline Deregulation Act of 1978, 49 U.S.C. § 1305(a)(1), preempted Mrs. Stagl's state

law negligence claim, and that, in any event, Mrs. Stagl had failed to establish a *prima facie* case of negligence on Delta's part. Mrs. Stagl opposed Delta's motion and formally cross-moved to compel Delta to provide her with the accident information that she had previously requested.

In a Memorandum and Order dated February 22, 1994, the district court granted Delta summary judgment. The district judge held that the Airline Deregulation Act did not preempt Mrs. Stagl's negligence claim. *See Stagl,* 849 F.Supp. at 182–83. He then concluded that, under New York law, Mrs. Stagl had "failed to establish that Delta's duty as an air carrier encompasses a duty to control the crowd at the baggage retrieval area or designate a separate area for elderly passengers." *Id.* at 183. The district judge further determined that Delta had, in any event, fulfilled its duty to act reasonably under the circumstances. *See id.* at 184. Accordingly, the district court dismissed Mrs. Stagl's action and denied her cross-motion for discovery as moot. *See id.* at 185.

On appeal, Mrs. Stagl argues that the district court: (1) erroneously narrowed the duty of reasonable care that Delta owed passengers located in its luggage retrieval area; (2) usurped the jury's function in determining that Delta acted reasonably under the circumstances; and (3) abused its discretion in denying her cross-motion for additional discovery. We agree.

## DISCUSSION

### I. *Delta's Motion for Summary Judgment*

■ To succeed on a motion for summary judgment, the moving party must show that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). The district court "must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Consarc Corp. v. Marine Midland Bank, N.A.,* 996 F.2d 568, 572 (2d Cir.1993). We review a district court's grant of sum-

mary judgment *de novo.* *See Westinghouse Elec. Corp. v. New York City Transit Auth.,* 14 F.3d 818, 821 (2d Cir.1994).

■ On appeal, neither party has questioned the district court's preemption ruling, and we therefore take it as given that state law applies. Because both parties agree that New York cases are controlling, we shall assume that New York law governs this diversity action. In order to establish a *prima facie* case of negligence under New York law, a claimant must show that: (1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty; and (3) the plaintiff suffered damage as a proximate result of that breach. *See Solomon v. City of New York,* 66 N.Y.2d 1026, 1027, 499 N.Y.S.2d 392, 392, 489 N.E.2d 1294, 1294 (1985). This appeal raises questions that touch upon all three elements, and we shall address each one in turn.

**A. *Delta's Duty of Reasonable Care***

The district court ruled that "Delta owed no duty to protect [Mrs. Stagl] from the particular injury involved here." *Stagl,* 849 F.Supp. at 183. Relying upon several airport cases involving injuries to passengers that resulted from other passengers' careless placement of luggage, *see Gross v. American Airlines, Inc.,* 755 F.Supp. 89 (S.D.N.Y.1991); *Gray v. America West Airlines, Inc.,* 209 Cal.App.3d 76, 256 Cal.Rptr. 877 (4th Dist. 1989), the district court concluded that Delta had no obligation "to protect against or warn of potential negligent conduct by third persons within the terminal building." *See Stagl,* 849 F.Supp. at 184. This was error.

■ There is no question that Delta, as an owner or occupier of the premises, owed a duty to take reasonable steps in maintaining the safety of its baggage retrieval area. *See Basso v. Miller,* 40 N.Y.2d 233, 241, 386 N.Y.S.2d 564, 568, 352 N.E.2d 868, 872 (1976) ("A landowner must act as a reasonable [person] in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk.") (internal quotations omitted); *Koppel v. Hebrew Academy of Five Towns,* 191 A.D.2d 415, 415, 594

N.Y.S.2d 310, 311 (2d Dep't 1993) (same); *see also Kush v. City of Buffalo,* 59 N.Y.2d 26, 29, 462 N.Y.S.2d 831, 833, 449 N.E.2d 725, 726 (1983) ("A landowner has a duty to exercise reasonable care under the circumstances in maintaining its property in a safe condition."); *Cruz v. New York City Transit Auth.,* 136 A.D.2d 196, 198, 526 N.Y.S.2d 827, 828 (2d Dep't 1988) ("a common carrier is required to exercise reasonable or ordinary care, in view of the dangers to be apprehended, in providing and maintaining safe and adequate stairways in its stations").

■ This duty is a broad one, and it includes the obligation "to take reasonable precautions to protect [patrons] from dangers which are foreseeable from the arrangement or use of the property," W. Page Keeton, Dan B. Dobbs, Robert E. Keeton, David G. Owen, Prosser and Keeton on Torts, § 61 at 425–26 (5th ed. 1984) [hereinafter "Prosser & Keeton"], as well as to exercise reasonable care in protecting visitors from the foreseeable, injurious actions of third parties. *See Nallan v. Helmsley–Spear, Inc.,* 50 N.Y.2d 507, 518–19, 429 N.Y.S.2d 606, 613, 407 N.E.2d 451, 457 (1980) (landlord has duty to take reasonable precautionary measures to minimize risk of foreseeable criminal activity and make premises safe for visiting public); *Lindskog v. Southland Restaurant, Inc.,* 160 A.D.2d 842, 843, 554 N.Y.S.2d 276, 277 (2d Dep't 1990) ("A landowner has the duty to control the conduct of persons present on his premises when he has the opportunity to control or is reasonably aware of the necessity of such control."); *Stevens v. Kirby,* 86 A.D.2d 391, 394, 450 N.Y.S.2d 607, 610 (4th Dep't 1982) ("A tavern owner owes a duty to his patrons to protect them from personal attack when he has reasonable cause to anticipate conduct on the part of third persons which are likely to endanger their safety."); Restatement (Second) of Torts § 344 (1977).

In deciding that "Delta was under no duty to protect against or warn of potential negligent conduct of third persons within the terminal building," 849 F.Supp. at 184, the district court relied primarily upon two decisions—only one of which involves New York law, and that ruling by a federal district

court. That case, *Gross v. American Airlines, Inc.*, 755 F.Supp. 89 (S.D.N.Y.1991), concerned a passenger who was injured while standing on an airport curbside check-in line. *See id.* at 90. A woman in line next to the plaintiff fell backwards, allegedly over a piece of hand luggage that had been carelessly left on the ground, causing the plaintiff to lose his own balance and to injure himself. *See id.* In dismissing the plaintiff's claim against the airline, the district judge stated: "I find it unreasonable, indeed silly, to impose a duty on [the airline] to post signs warning passengers to watch out for the very obvious placement of luggage by the feet of other passengers nearby in the check-in line." *Id.*

Despite the loose "no duty" language contained in *Gross,* however, that decision does not stand for the proposition that an airline owes its patrons no duty to take reasonable care against the foreseeable, injurious actions of third parties on airline premises. To the contrary, the court in *Gross* specifically stated that the airline "owed a duty of care to [the plaintiff] while he was on the [airline's] check-in line." 755 F.Supp. at 91. The court dismissed the plaintiff's complaint not for the lack of an existing duty on the part of the airline, but because the plaintiff could not establish even a *prima facie* case that the defendant had been negligent at all. The court determined that the plaintiff had

> not presented any evidence that [the airline] failed to act reasonably in providing a safe check-in process. Furthermore, by failing to show what caused the woman next to him to fall, the plaintiff ha[d] failed to link his injury to any action or inaction on the part of [the airline].

755 F.Supp. at 91. *See also MacDonald v. Air Canada,* 439 F.2d 1402, 1404–05 (1st Cir.1971) (affirming district court's directed verdict for an airline-defendant where an elderly woman who fell in airport terminal was standing away from the confusion of the baggage carousel and there was no evidence that she tripped over any luggage).

The second case relied on by the district court, *Gray v. America West Airlines, Inc.,* 209 Cal.App.3d 76, 256 Cal.Rptr. 877 (4th Dist.1989) involved an equally ill-fated passenger who, after receiving her boarding pass at the airline's ticket counter, tripped over a box that had been carelessly left at her feet. *Id.* at 80, 256 Cal.Rptr. at 878. In affirming the trial judge's grant of summary judgment for the defendant-airline, the California appellate court stated that "no duty can be imposed on the businesses serving travellers to safeguard them from tripping over another's luggage in busy common areas like an airport concourse." *Id.* at 83, 256 Cal.Rptr. at 881.

Even if *Gray* were representative of New York law, it would be easily distinguishable. There, the accident occurred in the airport concourse, which the court described as a "busy common area[ ]." *Id.* at 84, 256 Cal.Rptr. at 881. The court held that "such a public concourse area is more analogous to a public street or sidewalk than to the premises of a private business," and therefore concluded that the landowner's duty of reasonable care did not attach to the defendant-airline. *Id.* at 84–85, 256 Cal. Rptr. at 881–82. Here, of course, Mrs. Stagl was injured in Delta's own baggage terminal, over which Delta had full dominion and control. Under these circumstances, we think that New York law would apply the traditional landowner's duty of reasonable care to Delta. As the occupier of these premises, Delta was required to take all reasonable measures to ensure that Mrs. Stagl's trip to the baggage carousel was a safe one. *See Elston v. FCO Auto Racing, Inc.,* 161 A.D.2d 561, 562, 555 N.Y.S.2d 394, 395 (2d Dep't 1990).[1]

1. In addition to the traditional landowner's duty, we note that New York law imposes a duty of reasonable care on Delta, as a common carrier, "to protect its passengers from other travelers." *Pulka v. Edelman,* 40 N.Y.2d 781, 784, 390 N.Y.S.2d 393, 396, 358 N.E.2d 1019, 1022 (1976). "This duty may obviously be implied from the contract of carriage and stems from control of the carrier." *Id.; see also Purdy v.* *Public Adm'r of County of Westchester,* 72 N.Y.2d 1, 8, 530 N.Y.S.2d 513, 516, 526 N.E.2d 4, 8 (1988) (listing common carrier/passenger relationship among "special circumstances in which there is sufficient authority and ability to control conduct of third persons that [courts] have identified a duty to do so"); *Christopher v. I.B.I. Security Serv., Inc.,* 183 A.D.2d 615, 615–16, 584 N.Y.S.2d 34, 35 (1st Dep't 1992) (common carri-

In the present case, the district judge refused to impose an obligation upon Delta to safeguard passengers against the foreseeable risks created by its concentration of allegedly unruly travelers around a congested baggage carousel. In the district court's opinion, such a duty would "offer little if any real public benefit, and yet would impose upon the airline burdensome and costly obligations." *Stagl,* 849 F.Supp. at 185. Although we appreciate that, under New York law, the "existence and scope of an alleged tortfeasor's duty is usually a policy-laden declaration reserved for Judges" that, in part, weighs competing socioeconomic factors in an attempt to distribute "burdens of loss and reparation on a fair, prudent basis," *Palka v. Servicemaster Management Servs. Corp.,* 83 N.Y.2d 579, 585, 611 N.Y.S.2d 817, 820, 634 N.E.2d 189, 192 (1994); *see also De Angelis v. Lutheran Medical Center,* 58 N.Y.2d 1053, 1055, 462 N.Y.S.2d 626, 627–28, 449 N.E.2d 406, 407–08 (1983), we also note that New York courts do not exercise this authority on an *ad hoc* basis.

To the contrary, the judicial power to modify the general rule that

> [w]henever one person is by circumstances placed in such a position with regard to another that every one of ordinary sense who did think would at once recognize that if he did not use ordinary care and skill in his own conduct with regard to the circumstances he would cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger,

*Havas v. Victory Paper Stock Co.,* 49 N.Y.2d 381, 386, 426 N.Y.S.2d 233, 236, 402 N.E.2d 1136, 1138 (1980) (quoting *Heaven v. Prender,* 11 Q.B.D. 503, 509 (1883)), is reserved for very limited situations. Thus, for example, in determining that a tort duty to third parties may arise out of a contractual assumption of responsibilities, *see Palka,* 83 N.Y.2d at 587, 611 N.Y.S.2d at 821, 634 N.E.2d at 193, and in recognizing that concepts underlying the former assumption of risk doctrine survive in a very limited area, and may serve to bar some sports-related negligence claims despite the passage of a comparative negligence statute, *see Turcotte v. Fell,* 68 N.Y.2d 432, 437–39, 510 N.Y.S.2d 49, 52–53, 502 N.E.2d 964, 967–68 (1986), New York courts have conducted fact-specific duty analyses.[2] But where, as here, the applicable duty relationship is well established, we do not believe New York law condones the limitation of a familiar liability rule simply to avoid placing a disproportionate burden on a defendant in a particular case. The law deals with that problem not by redefining the defendant's duties in each case, but by asking whether—considering all the circumstances of the particular case—the defendant breached its duty of care.

---

er/passenger relationship imposes "a duty to control the conduct of third persons to prevent them from causing injury to others").

In the context of a case similar to the present one, the Fifth Circuit has provided a useful formulation of this other traditional duty:

> [A] carrier must reasonably take cognizance of the habits, customs and practices followed generally by its passengers insofar as these actions present hazards to its business invitees, and with an awareness of these hazards, it must take reasonably appropriate steps to avoid or minimize the likely harm.

*Garrett v. American Airlines, Inc.,* 332 F.2d 939, 942 (5th Cir.1964) (reversing directed verdict for an airline-defendant where passenger fell backwards over carelessly placed luggage and airline acknowledged its awareness that many travelers place hand bags at their feet while waiting at the gate).

**2.** New York courts have apparently undertaken preliminary duty analyses in situations in which the existence of liability would run against longstanding common-law rules. Thus, in *De Angelis,* the court refused to extend an action for loss of consortium beyond spouses to children of tort victims. *See* 58 N.Y.2d at 1055, 462 N.Y.S.2d at 627–28, 449 N.E.2d at 407–08. Similarly, in *Turcotte,* the court interpreted New York's comparative negligence statute in the light of the ancient common-law notion that individuals can knowingly agree to take on some risks and thereby insulate others from a duty to protect them from those hazards. *See* 68 N.Y.2d at 437–39, 510 N.Y.S.2d at 52–53, 502 N.E.2d at 967–68. And in *Palka,* the court carefully bridged the gap between contractual privity and third-party tort liability by finding that the obligations assumed by the defendant were sufficient to establish the requisite relationship from which the defendant's duty to the non-contracting plaintiff arose. *See* 83 N.Y.2d at 585–87, 611 N.Y.S.2d at 820–21, 634 N.E.2d at 192–93.

## B. *Delta's Alleged Breach of Duty*

Apparently as an alternative basis for its decision, the district court determined that "Delta fulfilled its duty to act reasonably under the circumstances." *Stagl,* 849 F.Supp. at 184. This, of course, raises the age-old debate as to when it is appropriate for a court to decide the question of a defendant's due care as a matter of law, rather than allowing a jury to resolve it as an issue of fact. The problem was perhaps best presented in *Lorenzo v. Wirth,* 170 Mass. 596, 49 N.E. 1010 (1898), the noted case that posed the burning question of whether a court may rule that an open coalhole in the sidewalk, with a pile of recently delivered coal upon it, is so obviously hazardous to all pedestrians that the exercise of ordinary care does not require the placement of additional warnings.

Answering in the affirmative, then-Judge Holmes stated that "[i]n simple cases of this sort, courts have felt able to determine what, in every case, however complex, defendants are bound at their peril to know, namely, whether the given situation is on one or the other side of the line [of the defendant's duty of care]." 170 Mass. at 600, 49 N.E. at 1101. Judge Knowlton took the opposite view in *Lorenzo,* and insisted that the

> kind of conduct ... required under complex conditions, to reach the usual standard of due care, namely, the ordinary care of persons of common prudence, is a question of fact, to be determined according to the observation and experience of common men. Even when there is no conflict in testimony, if there are acts and omissions, of which some tend to show negligence, and others do not, the question whether there was negligence or not is, in my judgment, a question for the jury.

170 Mass. at 604, 49 N.E. at 1101–02 (Knowlton, J., dissenting).

Although vestiges of this polemic survive, *see, e.g., Akins v. Glens Falls City School Dist.,* 53 N.Y.2d 325, 441 N.Y.S.2d 644, 424 N.E.2d 531 (1981) (concluding, over strong dissent, that the installation of a standard backstop fence fulfills a baseball park owner's duty of reasonable care to protect spectators from foul balls as a matter of law),[3] Holmes' view—" 'that standards of conduct ought increasingly to be fixed by the court for the sake of certainty—has been largely rejected.' " *See* Fowler V. Harper, Fleming James, Jr., Oscar S. Gray, The Law of Torts § 15.3, at 358–59 n. 16 & n. 4 (2d ed. 1986) [hereinafter "Harper & James"] (quoting *Nuckoles v. F.W. Woolworth Co.,* 372 F.2d 286, 289 (4th Cir.1967)); Richard M. Nixon, *Changing Rules of Liability In Automobile Accident Litigation,* 3 Law & Contemp.Probs. 476, 477 (1936).[4] Indeed, the New York Court of Appeals has concluded that it is

> particularly appropriate to leave [a finding of negligence] to the jury, not only because of the idiosyncratic nature of most tort cases ..., or because there was room for a difference of view as to whether [the defendant's] conduct in the particular circumstances of this case did or did not evidence a lack of due care, but, perhaps above all, because in the determination of issues revolving about the reasonableness of conduct, the values inherent in the jury system are rightfully believed an important instrument in the adjudicative process....

*Havas,* 49 N.Y.2d at 388, 426 N.Y.S.2d at 237, 402 N.E.2d at 1139 (citations omitted); *see also Nallan,* 50 N.Y.2d at 520 n. 8, 429 N.Y.S.2d at 614 n. 8, 407 N.E.2d at 458 n. 8; ("[w]hat safety precautions may reasonably be required of a landowner is almost always a question of fact for the jury"); *Philpot v. Brooklyn Nat'l League Baseball Club,* 303 N.Y. 116, 121, 100 N.E.2d 164, 167 (1951)

---

3. *Cf. Brown v. San Francisco Ball Club, Inc.,* 99 Cal.App.2d 484, 222 P.2d 19 (1950) (analyzing an analogous fact situation under the more traditional rubric of assumption of risk).

4. It may be worth noting that Mr. Nixon wrote this article when he was a law student at Duke University Law School. Long before he became a significant political figure, Mr. Nixon's article was recognized as a leading piece on the

Holmes–Knowlton controversy because it was one of the first to apply "legal realism" to the debate. Nixon suggested the desirability of the Holmes position because of the perceived tendencies of juries to be biased in favor of plaintiffs. *See* 3 Law & Contemp.Probs. at 477. Despite his own viewpoint, however, Nixon recognized that, by and large, Holmes had lost out. *See id.* at 479.

(whether means adopted by baseball club to protect stadium spectators from reasonably foreseeable misuse of empty glass beverage bottles was a jury question); *Cruz,* 136 A.D.2d at 202, 526 N.Y.S.2d at 831 (sufficiency of transit authority's precautions against passengers' foreseeable misuse of elevated platform railing was a jury question that precluded entering judgment as a matter of law).[5]

Nevertheless, Delta argues that this action properly falls within a narrow category of "crowd control" cases, in which the New York courts have significantly limited the jury's role in determining what constitutes reasonable care. *See e.g. Williams v. New York Rapid Transit Corp.,* 272 N.Y. 366, 369, 6 N.E.2d 58, 59 (1936); *Palermo v. New York City Transit Auth.,* 141 A.D.2d 809, 810, 530 N.Y.S.2d 25, 26 (2d Dep't 1988); *McIvor v. New York, New Haven and Hartford Railroad Co.,* 10 A.D.2d 961, 201 N.Y.S.2d 681, 682 (2d Dep't 1960); *Ryan v. City of New York,* 7 A.D.2d 298, 299, 182 N.Y.S.2d 616, 617 (1st Dep't), *aff'd,* 6 N.Y.2d 896, 190 N.Y.S.2d 705, 160 N.E.2d 924 (1959); *Cross v. Murray,* 260 A.D. 1030, 24 N.Y.S.2d 500, 501 (2d Dep't 1940); *Lynch v. Consolidated Rail Corp.,* 439 F.Supp. 110, 112 (S.D.N.Y. 1977). These cases almost always involve injuries sustained on railway platforms, and hold that in order to establish a prima facie claim of negligence against the carrier, "it must be shown that the crowd was so large and unmanaged that a user of the platform was restricted in his free movements or was unable to find a safe standing place, and that as a result of either of those conditions an injury was sustained." *Cross* 260 A.D. at 1030, 24 N.Y.S.2d at 501; *see also Palermo,* 141 A.D.2d at 810, 530 N.Y.S.2d at 26 (affirming summary judgment dismissing a claim for injuries sustained while on line for a public bus). Delta contends that, because Mrs. Stagl cannot prove that this condition existed in the baggage terminal at the time she was injured, the district court correctly dismissed her claim.

 We do not find these decisions applicable here. To start, we read these cases to stand only for the proposition that if a landowner maintains conditions that are

---

**5.** We do not mean to suggest that summary judgment is never appropriate in these types of cases. "Only in those cases where there arises a real question as to the landowner's negligence should the jury be permitted to proceed.... Where proof of any essential element falls short, the case should go no further." *Basso,* 40 N.Y.2d at 242, 386 N.Y.S.2d at 569, 352 N.E.2d at 873. Here, the district judge suggested that in the absence of some heightened duty of care attributable to Delta as a common carrier, it was appropriate for the court to decide the negligence issue on its own. *See Stagl,* 849 F.Supp. at 183–84. In fact, many jurisdictions, including New York, have rejected the concept of varying degrees of care and, in its place, have adopted a single negligence standard measured according to "reasonably prudent conduct under the circumstances." Rather than trying to stratify different levels of obligation, this standard treats relationships of heightened dependence, such as those between common carriers and their business invitees, as one of several factors to be considered in determining whether conduct is reasonable in a given context. *See, e.g., Basso,* 40 N.Y.2d at 233, 386 N.Y.S.2d at 568, 352 N.E.2d at 872 (abolishing common law distinctions between licensees, trespassers and invitees, and holding that "[w]hile status is no longer determinative, considerations of who plaintiff is and what his purpose is upon the land are factors which, if known, may be included in arriving at what would be reasonable care under the circum-

stances"); *Prosser & Keeton* § 34, at 209 (in assessing reasonable care, "the greater the danger, or the greater the responsibility, is merely one of the circumstances" to be considered). Among the other considerations that may be relevant in determining whether Delta met its basic obligation to maintain its premises in a reasonably safe condition are "such variables as the seriousness of the risk and the cost of the various safety measures." *Nallan,* 50 N.Y.2d at 520 n. 8, 429 N.Y.S.2d at 614 n. 8, 407 N.E.2d at 458 n. 8. And the fact-specific nature of these considerations, of course, militates even more strongly in favor of allowing a jury to resolve the matter. *See Philpot,* 303 N.Y. at 121, 100 N.E.2d at 167.

Based upon several older cases that discussed the limits of a common carriers' former duty of "highest care," the district court came to the erroneous conclusion that, under New York law, Delta owes its passengers a heightened duty of care—but only during their actual course of travel. *See Stagl,* 849 F.Supp. at 183. Although this was merely dictum, we wish to emphasize that New York law holds a common carrier "to the same standard of care as any other alleged tortfeasor: It must exercise ordinary care commensurate with the existing circumstances." *Plagianos v. American Airlines, Inc.,* 912 F.2d 57, 59 (2d Cir.1990) (per curiam) (internal quotations and citations omitted). And this uniform standard applies as much during travel as it does before or after.

reasonably safe under circumstances of normal crowding, and if there is no excessive or unruly crowding at the time an injury occurs, the landowner does not breach his or her duty of care. Indeed, relying on a factual record that showed no overcrowding or unreasonable obstruction of a railway platform to support its holding, the New York Court of Appeals was nevertheless careful to distinguish factors that would have made the case one for the jury. The court stated:

> This is not a case of an excessive crowding of a platform. This one is capable of accommodating a hundred or more passengers. Nor is it a case of failure to repress a boisterous or unruly aggregation of passengers. Conditions were in all respects normal.

*Williams*, 272 N.Y. at 369, 6 N.E.2d at 59; *see also Palermo*, 141 A.D.2d at 810, 530 N.Y.S.2d at 26 ("There was no .evidence that the plaintiff's freedom of movement was unduly restricted nor was it demonstrated that she was unable to find a safe place to stand."); *McIvor*, 10 A.D.2d at 961, 201 N.Y.S.2d at 682 ("The evidence is insufficient to support a finding that the injury was caused by defendant's negligence. . . ."); *Commerford v. Interborough Rapid Transit Co.*, 199 A.D. 852, 192 N.Y.S. 349, 350 (1st Dep't 1922) ("the evidence falls very far short under the authorities of showing any negligence in regard to the space of the platform or in regard to its being overcrowded"). At least as Mrs. Stagl describes it, her case presents the type of scenario—described in *Williams*—that warrants a jury determination. After all, according to Mrs. Stagl, the Delta terminal was "bedlam."

Moreover, although Mrs. Stagl has somewhat inartfully framed her claim in terms of negligent "crowd control," we note that she does not base her cause of action solely on Delta's alleged failure to control a crowd. The crux of her liability theory is the alleged absence of a reasonably safe system of passenger luggage retrieval. *Cf. Garrett v. American Airlines, Inc.*, 332 F.2d 939, 942 (5th Cir.1964) (distinguishing airline's broader duty to safeguard against hazardous passenger activity from a more narrow theory of slip-and-fall liability).

■■■ To put it another way, Mrs. Stagl does not contend that the crowd of people in Delta's terminal was the sole instrumentality of her injuries. Rather, she finds fault with Delta's lack of passenger supervision in conjunction with the airline's control and operation of its baggage carousel. *Cf.* 79 N.Y.Jur.2d § 31 (1989) ("The plaintiff in all negligence cases may show that better, safer, and more practicable devices than those used were available to the defendant."). And the existence of an unruly crowd, although certainly a relevant factor, is only one element to be considered in determining whether, in the context of the events, Delta breached its duty of reasonable care to Mrs. Stagl. *See, e.g., Paranzino v. Yonkers Raceway, Inc.*, 9 Misc.2d 378, 380, 170 N.Y.S.2d 280, 282–83 (App.Term.1957) (raceway negligent for failing to take "salutary precaution" of placing police officers at strategic points on stairwell to manage crowd); *Schubart v. Hotel Astor, Inc.*, 168 Misc. 431, 434, 5 N.Y.S.2d 203, 207 (Sup.Ct.) (hotel, which had prior notice of unruly crowd of guests, negligent for failing to post doorman at revolving door to protect other patrons), *aff'd*, 255 A.D. 1012, 8 N.Y.S.2d 567 (2d Dep't 1938), *aff'd*, 281 N.Y. 597, 22 N.E.2d 167 (1939); *cf. Cejka v. R.H. Macy & Co.*, 3 A.D.2d 535, 535–36, 162 N.Y.S.2d 207, 208 (1st Dep't 1957) (per curiam) (suggesting that a department store's duty of care would have required stationing guards at revolving doors to protect patrons if there had been evidence of congestion or overcrowding), *aff'd*, 4 N.Y.2d 785, 173 N.Y.S.2d 24, 149 N.E.2d 525 (1958).

In support of her contention that Delta was careless in managing its baggage carousel and the crowd around it, Mrs. Stagl submitted the affidavit of an engineer named Grahme Fischer. Mr. Fischer enumerated several ways in which, in his opinion, Delta could have made the baggage carousel area safer for passengers like Mrs. Stagl. Without expressing any views regarding the reasonableness of the proposed measures contained in this affidavit, we conclude that, when read in the light most favorable to Mrs. Stagl, Mr. Fischer's statement clearly raises issues of fact as to whether Delta sufficiently discharged its duty of care. *Cf. Cruz*, 136

A.D.2d at 198, 526 N.Y.S.2d at 829 (testimony of engineer regarding negligent design of platform railing, viewed most favorably to the plaintiffs, "was sufficient to establish a prima facie a case" precluding directed verdict).[6]

For all these reasons, the district court's judgment that Delta was free from negligence as a matter of law cannot stand.

## C. *Proximate Causation and Third Party Intervenors*

Since Delta's alleged negligence is a jury question, the district court should not have dismissed the case unless it could say, as a matter of law, that Delta's actions were not the proximate cause of Mrs. Stagl's injuries. According to Delta, the proximate cause of Mrs. Stagl's injuries was the rogue passenger at the baggage carousel—that is, his luggage-wielding behavior was a superseding event that now insulates the airline from liability. This contention has no merit.

The governing rule in New York has long been settled and is perfectly clear: an intervenor's actions will not break the necessary chain of causation where they are "a normal or foreseeable consequence of the situation created by the defendant's negligence." *Derdiarian v. Felix Contracting Corp.,* 51 N.Y.2d 308, 315, 434 N.Y.S.2d 166, 169, 414 N.E.2d 666, 670 (1980); *see also Kush v. City of Buffalo,* 59 N.Y.2d 26, 33, 462 N.Y.S.2d 831, 835, 449 N.E.2d 725, 729 (1983) ("When ... the intervening act is a natural and foreseeable consequence of a circumstance created by the defendant, liability will subsist."). Conversely, "[i]f the intervening act is extraordinary under the circumstances, not foreseeable in the normal course of events, or independent of or far removed from defendant's conduct, it may well be a superseding act which breaks the causal nexus." *Derdiarian,* 51 N.Y.2d at 315, 434 N.Y.S.2d at 169, 414 N.E.2d at 670. Fur-

thermore, in order for the causal link to remain intact, a defendant need not foresee the precise intervening act; its occurrence need only fall within the general category of reasonably anticipated consequences of the defendant's actions. *See id.,* at 315–16, 434 N.Y.S.2d at 169–70, 414 N.E.2d at 670–71.

In light of these principles, Delta's causation argument immediately fails. An impatient, suitcase-swinging traveler at a crowded airport baggage carousel hardly seems an extraordinary event. *Cf. Derdiarian,* 51 N.Y.2d at 316, 434 N.Y.S.2d at 170, 414 N.E.2d at 670 (court could not determine as a matter of law that epileptic's failure to take medication causing him to lose control of his car and crash into a roadside construction site was a superseding cause that shielded gas company from liability for its failure to safeguard its workers); *Cruz,* 136 A.D.2d at 199, 526 N.Y.S.2d at 829 (actions of third person who inadvertently knocked plaintiff off his perch on elevated subway platform railing was not so extraordinary or unforeseeable as to constitute a superseding cause of plaintiff's injuries as a matter of law); *Garrett,* 332 F.2d at 943 (condoning the inference that a passenger might foreseeably fall on carelessly placed luggage while waiting on line to board plane).

Indeed, the appearance of a rude and hurried passenger at Delta's LaGuardia terminal is highly unlikely to break the causal connection between the airline's alleged negligence and Mrs. Stagl's injury—particularly since Mrs. Stagl's theory of negligence rests on Delta's claimed failure to mitigate the very risks generated by such people. *See Derdiarian,* 51 N.Y.2d at 316, 434 N.Y.S.2d at 170, 414 N.E.2d at 671 ("An intervening act may not serve as a superseding cause, and relieve an actor of responsibility, where the risk of the intervening act occurring is the very same risk which renders the actor negligent.").[7] It certainly

---

6. We do not mean to suggest that Mrs. Stagl necessarily had to submit expert evidence in order for her claim to survive summary judgment. Other evidence could have done as well. *See* Harper & James § 17.1, at 547 ("Except for malpractice cases (against a doctor, dentist, etc.) there is no general rule or policy *requiring* expert testimony as to the standard of care, and this is true even in the increasingly broad area wherein expert opinion will be received."). Mr. Fischer's statement was merely one way to raise a triable issue of fact in this case.

7. This is especially true for common carriers who, as noted above, may be legally obligated to

does not do so as a matter of law. *See id.* ("Because questions concerning what is foreseeable and what is normal may be the subject of varying inferences, as is the question of negligence itself, these issues are generally for the fact finder to resolve."). The question of proximate cause in this case remains an issue for the jury to determine.

## II. *Mrs. Stagl's Cross Motion for Additional Discovery*

Since the District Court concluded that Delta owed Mrs. Stagl no duty of care with respect to the harm that she suffered, it denied her cross-motion for additional discovery. *See Stagl*, 849 F.Supp. at 185. Because we vacate the court's grant of summary judgment, and hold that Delta's duty of care extended to operating its baggage carousel in a reasonably safe manner, it is appropriate to address Mrs. Stagl's discovery claim.

 Discovery rulings fall within the discretion of the district court and, as a general matter, we will not disturb them on appeal absent an abuse of that discretion. *See Hollander v. American Cyanamid Co.*, 895 F.2d 80, 84 (2d Cir.1990). During a pretrial deposition, a Delta representative vaguely admitted that there had been previous carousel-related accidents. Thereafter, Mrs. Stagl sought further information from Delta regarding accidents similar to hers that have occurred in the past at or near the airline's airport baggage carousels. Evidence of such incidents would unquestionably be relevant, if not central, to Mrs. Stagl's case, and we hold that the district court's refusal to compel Delta's compliance with her request constituted an abuse of discretion. *See id.* (district court's restriction upon discovery that "unduly limited" plaintiff's ability to establish element of his wrongful discharge case warranted reversal of summary judgment).

To begin with, an accident record of this sort would be directly germane to establishing the degree of risk generated by Delta's method of luggage retrieval and hence

take reasonable precautions to protect their passengers from these types of intervening parties. *See Purdy v. Public Adm'r of County of Westchester,* 72 N.Y.2d 1, 8, 530 N.Y.S.2d 513, 516, 526

whether its failure to institute some other means was, in fact, negligent. *Cf. Villante v. Dep't of Corrections,* 786 F.2d 516, 521 (2d Cir.1986) (reversing summary judgment for defendant on 42 U.S.C. § 1983 claim because district court failed to order discovery that would have established whether defendant had notice of on-going assaults upon plaintiff).

Such information would also be highly relevant to strengthening Mrs. Stagl's proof of causation. A history of prior passenger collisions at Delta's baggage carousels would demonstrate beyond peradventure that the conduct of the unidentified man was a foreseeable consequence of Delta's alleged negligence and, thus, that his behavior did not sever the link between Delta's actions and Mrs. Stagl's injury.

Accordingly, we reverse the district court's denial of Mrs. Stagl's cross-motion to compel additional discovery.

## CONCLUSION

Because we hold that Delta owed Mrs. Stagl a duty to maintain its luggage retrieval area in a reasonably safe condition, and because we conclude that there exist issues of fact both as to whether Delta sufficiently discharged that duty and whether Delta's conduct was the proximate cause of Mrs. Stagl's injuries, we vacate the district court's entry of summary judgment on Delta's behalf. Furthermore, we reverse the district court's denial of Mrs. Stagl's cross-motion to compel additional discovery, and we remand this case for further proceedings consistent with this opinion.

N.E.2d 4, 8 (1988); *Pulka v. Edelman,* 40 N.Y.2d 781, 784, 390 N.Y.S.2d 393, 396, 358 N.E.2d 1019, 1022 (1976).