OPINION OF THE COURT
Walter J. Relihan, Jr., J.
The defendant, Clear Channel Broadcasting, Inc., operates a radio station which leases space in a building owned by Visions Member Service Corp. and Visions Federal Credit Union. A premises liability claim against the Visions defendants has been dismissed without opposition. Clear Channel moves for summary judgment dismissing the remainder of the complaint.
Plaintiffs decedent, Susan Santodonato, was part of a crowd which assembled at the station on the evening of June 13, 2000 in response to radio announcements that pop music star Britney Spears would be present at the station for an interview to be conducted by the station disc jockey. The publicity stunt featured a taped interview with Spears which was distributed to local stations. The tape, at intervals, left a gap which permitted a local disc jockey to interject his voice and to appear to engage the entertainer in a live colloquy. Needless to add, there was never any intent that Spears would actually be present.
A crowd, variously estimated at between 50 to 300 people, appeared outside the building housing the station at the appointed time. Susan Santodonato was there with her daughter. A limousine appeared, carrying a Spears impersonator, who entered the building. The entourage included a State Police car, with trooper, and a squad of what appeared to be bodyguards for the singer. The presence of a trooper, in an official vehicle, was not explained.
The interview was then broadcast as though Spears was in the building. At its conclusion, a crowd lined the front exit. However, the limo then drove from the front entrance around the corner of the radio station building to a side door where the impersonator emerged. By now, dusk had fallen. The crowd in front of the building ran around the corner to catch a glimpse of what was thought to be the pop star. Susan Santodonato was among the pursuers.
She ran around the corner of the building and fell, struck her head, and died several hours later. The plaintiffs response to defendant’s interrogatories states: “Mrs. Santodonato was pushed by a faux bodyguard or was bumped by a member of the crowd or made contact with a parked van ...” which caused *688 her to fall into a garage door handle. Still another possibility, not mentioned in the response, is that she tripped over a curb which might not have been apparent as she rushed around the corner of a building, in the dark, apparently seeking to snap a picture of Britney Spears as her impersonator left the building.
The exact cause of plaintiff’s decedent’s fall may never be known. The statement from a bystander (who since has denied ever having made the statement) recorded in a police report, which states that a bodyguard pushed the decedent, is hearsay and inadmissible (Johnson v Lutz, 253 NY 124 [1930]; Martin, Capra and Rossi, New York Evidence Handbook § 8.3.3.6, at 837 [1st ed 1997]). The plaintiffs responses to defendant’s discovery demands describe a number of possibilities but name no single cause in fact. This will pose a problem of persuasion for the plaintiff at trial. Whether it constitutes a legal obstacle to the submission of the issue to a jury poses a second and more formidable problem.
The plaintiff’s complaint asserts a fraud cause of action premised upon the falsity of the representations of the radio broadcaster that attracted a crowd to the scene which, if truth had been told, would not have gathered at all. There is no doubt that the falsity of the radio publicity created the occasion for the tragic death of Susan Santodonato. But this, standing alone, was not the cause of her fall and injury. Many members of the crowd, indeed all of them except Susan, survived the event without harm. Merely furnishing the occasion for the happening of the harm is not sufficient to establish that the occasion, of itself, was the cause (Feder v Tower Air, Inc., 12 AD3d 190 [1st Dept 2004]; Ortiz v Jimtion Food Corp., 274 AD2d 508 [2000]). The “but for” argument has never been accepted as a basis for liability (Loder v Greco, 5 AD3d 978 [2004]; Ortiz v Jimtion Food Corp., supra; Penovich v Schoeck, 252 AD2d 799 [1998]; Hersman v Hadley, 235 AD2d 714, 718 [1997]).
The complaint also states a negligence claim based upon the failure of defendant to provide adequate crowd control measures. Plaintiff argues that defendant should have known that an assembly of young people, lured to the scene on the expectation that Spears would be present, would create a risk of unruly behavior and the possibility of injury as a result of crowd misconduct. However, there is no evidence that Susan Santodonato was swept along by the crowd or could not have found a place of safety. Indeed, many of those in the crowd did not run. One of those who did, Peter Schaller, testified at a deposition *689 that “I was closest to her, and I was a good two feet away, foot away. And there was no one else closer than myself that would have been able to push her.” (Defendant’s exhibit 15 at 27.) Schaller also noted that he assumed that she fell “because no one was near her” and that “I don’t have direct knowledge of what caused her to fall” (ibid, at 24).
We recognize that the crowd, as it turned the corner around the side of the building, may have encountered a somewhat narrowed area between the building and various parked vehicles. But, as noted above, there is no evidence that these circumstances caused or contributed to the fall. This is not a case in which the absence of crowd control can be connected to the injury with the required degree of legal cause and effect. Accordingly, this theory of liability, as well as the fraud rationale, must fail (Madden v Pine Hill-Kingston Bus Corp., 288 AD2d 600 [2001]; Greenberg v Sterling Doubleday Enters., 240 AD2d 702 [1997]; Palmieri v Ringling Bros. & Barnum & Bailey Combined Shows, 237 AD2d 589 [1997]).
We turn to the real issue in the case: What duty, if any, did defendant owe decedent under the circumstances created by the hoax? This, of course, presents a threshold question of law for the court (Eiseman v State of New York, 70 NY2d 175 [1987]). The defendant, arguably, might have anticipated that, by creating the clear impression that Britney Spears would be escaping from a side door, the crowd would charge into the darkness, over unfamiliar ground, in an effort to catch a glimpse of their idol. Indeed, some such expectation must have been implicit in staging the supposed sally from the side door. As defendant rightly argues, a jury might conclude that the defendant reasonably could have assumed that the people in the crowd would be aware of the risks (viz., jostling or pushing among the crowd, running over uneven ground in the dark, etc.) and would act reasonably to avoid such dangers. If that became the jury view, a sustainable verdict in favor of defendant would ensue.
A jury, however, could also find that concocting a scenario involving such risks was unreasonable. In that event, the law would permit the jury to fasten liability upon the defendant for the foreseeable consequences of the stunt even though other intervening acts, of a less predictable nature, contributed to the tragedy. (Prosser and Keeton, Torts § 44, at 313 [5th ed].)
Restatement (Second) of Tofts § 443 adopts the generally prevailing view: “The intervention of a force which is a normal consequence of a situation created by the actor’s negligent *690 conduct is not a superseding cause of harm which such conduct has been a substantial factor in bringing about.” Comment a states: “It is not necessary that an act which is done by the person harmed ... be ‘reasonable’; ... It is enough that the act is a normal consequence of the situation created by the actor’s negligence.” Needless to add, any unreasonable conduct by the person harmed may constitute contributory fault which would diminish any recovery. Comment a continues: “but the actor’s negligent conduct is none the less the legal cause of the harm.” (See also § 447, Comments on Clause [c].)
Concededly, the plaintiffs problems of proof and persuasion are considerable. The evidence, at best, would permit a jury to find that Susan joined the chase and somehow fell in the dark and struck her head which inflicted a fatal injury. Feder v Tower Air, Inc. (12 AD3d 190 [2004]) is pertinent. The Court held (at 191):
“It is possible to establish both negligence and causation through circumstantial evidence, but to do so a plaintiff must show facts and conditions from which the negligence of the defendant, and causation of the accident by that negligence, may be reasonably inferred (see Schneider v Kings Highway Hosp. Ctr., 67 NY2d 743 [1986]). The plaintiff need not exclude every other possible cause of the accident, but must offer proof that causes other than defendant’s negligence are sufficiently ‘remote’ or ‘technical’ to allow a jury to base its verdict on logical inferences to be drawn from the evidence, rather than speculation . . . .”
Hence, the issue before the court is whether or not the evidence is sufficient to permit a jury finding of liability against Clear Channel based upon logical inferences drawn from circumstantial facts in the record and not upon speculation alone. Put differently, could a jury find that, more likely than not, the decedent’s injury was caused by defendant’s negligence rather than some other cause?
These questions, though rare, are no stranger to the common law and are frequently grouped together under the rubric “Normal Intervening Causes.” The term “normal” carries a special gloss. As Professors Prosser and Keeton put it: “There are . . . intervening causes which could scarcely have been contemplated by any reasonable person in the place of the defendant at the time of the conduct, but which are nevertheless *691 to be regarded as normal incidents of the risks the defendant has created . . . (Prosser and Keeton, Torts § 44, at 306 [5th ed].) In sum, where the injury can be “closely and reasonably associated with the immediate consequences of the defendant’s act, and form a normal part of its aftermath; and to that extent they are not foreign to the scope of the risk created by the original negligence,” such injuries have been recognized as sufficiently connected to defendant’s conduct as to satisfy the rules of proximate cause {ibid, at 307).
The defendant consciously staged a purported escape by the Spears impersonator in a manner which was calculated to excite and animate the crowd and to give them sufficient time to overtake her at the side door. It was dusk or dark. The ground was uneven. The side entrance is not designed to serve as a public entrance which could accommodate a large crowd with adequate paved approaches. This situation, or one like it, is envisioned at Restatement (Second) of Torts § 447, Comment b:
“The actor at the time of his negligence may have no reason to realize that a third person might act in the particular negligent manner in which [that] person acts, because his mind is not centered upon the sequence of events which may result from his act and therefore he has no reason to realize that it will create the situation which the [injured] person’s intervening act makes harmful. However, when the situation is known to exist, the likelihood that some negligent act may make it dangerous may be easily realizable or even obvious.”
No one, perhaps, could have predicted that a member of the crowd would trip, fall onto a garage door handle and suffer a fatal head injury. However, a fall in the dark as Susan ran down a grassy slope which ended with a curb of 2 or 3 inches in height bordering a paved surface hardly seems an extraordinary event. In order to preserve the causal link between defendant’s act and the harm, it is not necessary that defendant foresee the precise intervening act. Its occurrence need only fall within the general category of reasonably anticipated consequences of defendant’s actions (Derdiarian v Felix Contr. Corp., 51 NY2d 308, 315-316 [1980]; Stagl v Delta Airlines, Inc., 52 F3d 463, 473 [1995] [applying New York law]).
It is the conclusion of the court that circumstantial evidence is available in this case which is sufficient to generate a question of fact as to whether defendant’s conduct was a substantial *692 factor in causing the decedent to join a pell-mell race in the dark and to fall and sustain an injury when uneven terrain was encountered. Under these circumstances, unlike the traditional premises case (cf. Oliveira v County of Broome, 5 AD3d 898, 899 [2004]), there is no need to identify a specific dangerous or unsafe condition provided that plaintiff can establish that a fall, while running in the dark, was within the risks which could have been envisioned if sufficient thought had been focused on the matter (Restatement [Second] of Torts § 433). The result, a fall in the dark, could have been foreseen though a fall into a metal door handle, inflicting a fatal head injury, may have been beyond all expectation (cf. Prosser and Keeton, at 316).
Accordingly, the defendant’s motion to dismiss the complaint is denied.