CLEMENCE LORENZO *vs.* MARIA WIRTH, executrix.

Suffolk.    November 12, 1897. — April 9, 1898.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Negligence — Breach of Duty — Action.*

At the trial of an action for personal injuries occasioned to the plaintiff by stepping into an open coal hole, which was situated about eighteen inches in front of a house held by the defendant under a lease and upon land embraced in the lease, it appeared that the house was set back from the street and the hole was two feet or more outside the street line, but the paving over the space between the street line and the house was continuous with that of the street, and there was nothing in the usual conditions to show that it was not part of the street except the way in which it generally was used by the tenants for the deposit of barrels, etc., and the fact that the steps next to it on the side from which the plaintiff was coming came out to the line of the street; that at the time of the accident a coal wagon was backed up to the side of the wall in front of the premises, and coal which had been ordered by the defendant was being delivered from it by the servants of the coal dealer; that one of these had uncovered the coal hole and was shovelling the last of the coal out of the wagon on to the sidewalk; that the other stood by the hole doing such work as was necessary to help the coal pour down the hole; that the coal covered the whole sidewalk from the wagon to near the house; that the plaintiff, a Spanish woman, who according to her own testimony never had seen coal put through a coal hole before, stepped upon the steps of the next building above mentioned, thence stepped upon the coal, and then with her other leg went into the hole, which was thirty inches from the corner of the steps. *Held*, that the evidence disclosed no breach of the defendant's duty, and that the action could not be maintained. ALLEN & KNOWLTON, JJ. dissenting.

TORT, for personal injuries occasioned to the plaintiff by falling into a coal hole in Eliot Street, in Boston. Trial in the Superior Court, before *Fessenden*, J., who allowed a bill of exceptions, in substance as follows.

The coal hole was situated about eighteen inches in front of a

house held by the defendant under a lease, and upon land embraced in the lease. The house and the adjoining buildings for a considerable distance towards the west stood back from the line of the street about three feet and eight inches, and the coal hole was two feet or more outside the street line. The buildings in the other direction, with their projections, came out to the line of the street. The space in front of the defendant's building, and of the adjoining buildings towards the west, was paved with the same kind of material, and on the same level, all the way from the buildings to the curbstone, and was used as a sidewalk, and there was nothing in the usual conditions to give notice that it was not part of the street except the way in which it generally was used by the tenants for the deposit of barrels, etc., and the fact that the steps of the house next to it on the side from which the plaintiff was coming came out to the line of the street.

At the time of the accident, a coal wagon was backed up to the side of the wall in front of the premises, and coal, which had been ordered by the defendant, was being delivered from it by the servants of a coal dealer. One of these had uncovered the coal hole and was shovelling the last of the coal out of the wagon upon the sidewalk. The other stood by the hole, doing such work as was necessary to help the coal pour down the hole. There was testimony from several witnesses that the coal covered the sidewalk from the curbstone to the coal hole, and two others testified that it extended from the curbstone to the line of the defendant's house. The plaintiff, a Spanish woman, who according to her own testimony had just come from Spain and had never seen coal put through a coal hole before, stepped upon the steps of the next building above mentioned, thence stepped upon the coal, and then with her other leg went into the coal hole, which was thirty inches from the corner of the steps.

The accident occurred at a little before six o'clock on the evening of November 15, and there was testimony that it was dark, and that there was no daylight. There was evidence from the plaintiff and from another witness who was present, that they saw nobody about the coal hole before the accident. One of the two men who were delivering the coal was in the wagon from which he had just shovelled the last of the coal, and was

busy with his team, and he did not see the plaintiff until she was being lifted out of the hole. The other testified that he was about three feet from the coal hole, that he could not say what he was doing, that he thought his head was turned around looking up Eliot Street towards Tremont Street, which was in the direction opposite to that from which the plaintiff was coming. He also said in his testimony, " I was not shovelling coal at that time ; I was trying to keep myself on my feet. There was a throng of people going up there each way."

The defendant requested the judge to direct a verdict for the defendant. The judge refused so to do, and the defendant excepted.

The defendant requested the judge to rule as follows :

" 1. Upon all the evidence the plaintiff was a trespasser, and cannot recover. 2. There is not sufficient evidence of negligence on the part of the defendant to warrant the jury in finding a verdict for the plaintiff, and they should return a verdict for the defendant. 3. That the defendant is not liable for injuries caused by the existence of an unguarded hole upon the premises in question if the plaintiff's injuries were due to the fact of its proximity to the highway where the plaintiff was a traveller, and from which she wandered without invitation of the defendant. 4. If the plaintiff went upon the premises in the defendant's control without invitation, express or implied, and fell into the coal hole in question, she cannot recover for injuries caused thereby. 5. That the defendant had the right to use the sidewalk with the coal hole in question for the purposes of having coal put into her cellar, and might have maintained trespass for any interruption of such enjoyment of it; that the plaintiff had no right to walk upon the coal discharged there for that purpose, .and in so doing interfered with the defendant's proper enjoyment of her easement, was a trespasser, and cannot recover, if it is found that the defendant at the time of the injury was in possession of the premises in question. 6. That if the coal dealer was still in possession of the coal discharged upon the sidewalk there at the coal hole, and the control of the coal hole remained with the defendant, the plaintiff in walking upon the coal at and about the hole was a trespasser, and cannot recover. 7. That the plaintiff was bound to travel, if she continued on her way, in

that part of the highway at the time not in use by the coal delivery, and remaining open to travel, and in not doing so proceeded at her peril, and cannot recover."

The judge gave rulings numbered 3 and 4, and declined to give rulings 1, 2, 5, 6, and 7; and the defendant excepted.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

The case was argued at the bar in November, 1897, and afterwards was submitted on briefs to all the justices.

*T. W. Proctor*, for the defendant.

*R. H. Dana & H. R. Bailey*, for the plaintiff.

HOLMES, J. This is an action for personal injuries suffered by the plaintiff in consequence of her stepping into an open coal hole. The coal hole was situated about eighteen inches in front of a house held by the defendant under a lease, and upon land embraced in the lease. The house was set back from the street,. and the coal hole was two feet or more outside the street line. But the paving over the space between the street line and the house was continuous with that of the street, and there was nothing in the usual conditions to give notice that it was not part of the street except the way in which it generally was used by tenants for the deposit of barrels, etc., and the fact that the steps of the house next to it on the side from which the plaintiff was coming came out to the line of the street.

At the time of the accident, a coal wagon was backed up to the side wall in front of the premises, and coal, which had been ordered by the defendant, was being delivered from it by the servants of a coal dealer. One of these had uncovered the coal hole, and was shovelling the last of the coal out of the wagon upon the sidewalk. The other stood by the hole, doing such work as was necessary to help the coal pour down the hole. The coal covered the whole sidewalk from the wagon to near the house. The plaintiff, a Spanish woman, who according to her own testimony never had seen coal put through a coal hole before, stepped upon the steps of the next building above mentioned, thence stepped upon the coal, and then with her other leg went into the coal hole, which was thirty inches from the corner of the steps. The judge was asked to direct a verdict for the defendant, which he refused to do, and the defendant excepted.

The question in its common form is whether these facts show any evidence of negligence proper to be left to the jury. But it will be seen that it is not a question of evidence in the ordinary sense. It is not whether there is anything tending to prove a disputed fact. The acts and omissions of the defendant as to the plaintiff are fully known and undisputed. The question is whether those acts and omissions made the defendant liable for the plaintiff's hurt, — in the common language of the law, whether they constituted a breach of duty to the plaintiff. It will be observed, further, that the facts on which the question arises are quite simple, and are likely to be repeated with slight variations as long as coal holes exist; that they are all matters of eyesight, capable of being photographed; and that theory must recognize that at some point the visible situation would be such as to warrant the defendant in assuming that the public were sufficiently warned, or, in other words, that the defendant would have done her whole duty. *Chenery* v. *Fitchburg Railroad*, 160 Mass. 211, 214. It is true that blind men and foreigners unused to our ways have a right to walk in the streets, and this fact must be taken into consideration in drawing the line of the defendant's duty; but the line when drawn is a physical line, so to speak, — it is a visible situation in which all the arrangements or precautions which the law requires of a defendant are there, upon the ground.

In simple cases of this sort courts have felt able to determine what in every case however complex, defendants are bound at their peril to know, and are presumed to know, namely, whether the given situation is on one or the other side of the line. The examples are numerous, and we take the first that come to our hand. *Barron* v. *Eldredge*, 100 Mass. 455, 460, 461. *Pinney* v. *Hall*, 156 Mass. 225. *Crafter* v. *Metropolitan Railway*, L. R. 1 C. P. 300. We think that the case at bar is not beyond our competence to decide. The greatest danger in attempting to do so is that of being misled by ready made generalizations, and of thinking only in phrases to which as lawyers the judges have become accustomed, instead of looking straight at things and regarding the facts in all their concreteness as a jury would do. Too broadly generalized conceptions are a constant source of fallacy. Thus it is easy to say that the continuity of the sidewalk

was an invitation, and then to discuss in universals the duty of one who invites the public upon his land. But, invitation or no, the invitation is not the same, and the responsibility is not the same, when the place is seemingly in the middle of a clear highway, and looks safe and ready for travel to one who is walking straight along the open road, that it is where the place is in a snug corner and is capable of being reached only by going over steps which manifestly are not a part of the highway, and then by stepping into a pile of coal which surrounds the spot in question. Without considering whether under such circumstances the defendant would be freed from all duty in respect of the temporary dangers created by the coal dealer while he was doing his work, (*Clapp* v. *Kemp*, 122 Mass. 481,) it is the opinion of a majority of the court that she was not called on to stand guard and to tell the public that they must not understand the continuity of the pavement under the coal, if they happened to know of it, as a present assurance that they might step blindly into the coal, and as a warranty that there was no hole in the place where the coal was pouring down. A heap of coal on a sidewalk in Boston is an indication according to common experience that there very possibly may be a coal hole to receive it. But without saying that it always is a sufficient warning to look out for one, we are of opinion that, as against a person coming from where the plaintiff came from, with a coal hole situated as this was, the coal in the condition shown, and the business of delivery then going on, in the absence of men with baskets or other indication of a different means of making the delivery, the defendant cannot be said to have been wanting in due care.

*Exceptions sustained.*

KNOWLTON, J. I am unable to agree to the opinion of the majority in this case. The building occupied by the defendant, and the adjoining buildings for a considerable distance towards the west, stood back from the line of the street about three feet and eight inches. The buildings in the other direction, with their projections, came out to the line of the street. The space in front of the defendant's building and of the adjoining buildings towards the west was paved with the same kind of material, and on the same level all the way from the buildings to the curb-

stone, and was used as a sidewalk. The walk was not very wide, and there was nothing to mark the line of the street. In *Holmes* v. *Drew,* 151 Mass. 578, 580, is this language: " The jury might have inferred from the facts stated that the defendant laid out and paved the sidewalk on her own land in order that it should be used by the public as the sidewalk of the street, and allowed it to remain apparently the part of the street that was intended to be used by foot passengers. This would amount to an invitation to the public to enter upon and use as a public sidewalk the land so prepared, and the plaintiff so using it would have gone upon the defendant's land by her implied invitation, and she would owe to him the duty not to expose him to a dangerous condition of the walk which reasonable care on her part would have prevented." In *Plummer* v. *Dill,* 156 Mass. 426, 430, the court says, referring to cases of this kind, they " stand on a ground peculiar to themselves. They are where the defendant by his conduct has induced the public to use a way in the belief that it is a street or public way which all have a right to use, and where they suppose they will be safe. The inducement, or implied invitation, in these cases, is not to come to a place of business fitted up by the defendant for traffic, to which those only are invited who will come to do business with the occupant, nor is it to come by permission, or favor, or license, but it is to come as one of the public and enjoy a public right, in the enjoyment of which one may expect to be protected. The liability in such a case should be coextensive with the inducement or implied invitation." I think that the jury might have found the circumstances under which the plaintiff was walking upon the sidewalk at the time of the accident to be such as entitled her to protection or warning against openings in it.

At the time of the accident the coal hole was being used for the defendant's benefit, by her authority. If this use would ordinarily be attended with danger to the public, the defendant was bound to see that proper precautions were taken for their safety, even if the work was being done by an independent contractor. *Curtis* v. *Kiley,* 153 Mass. 123. *Woodman* v. *Metropolitan Railroad,* 149 Mass. 335. *Pye* v. *Faxon,* 156 Mass. 471, 474. *Pickard* v. *Smith,* 10 C. B. (N. S.) 470. The opinion in *Clapp* v. *Kemp,* 122 Mass. 481, does not purport to state the

rule of law applicable to such cases, but only decides that the instruction given was sufficiently favorable to the defendant. Although the men who delivered the coal, and their employer, might be liable over to the defendant if she should be held liable on account of their negligence, the defendant is herself liable as if they had been her own servants, if while using the coal hole under her authority they exposed the plaintiff to danger by negligently leaving an unguarded opening in the sidewalk.   *Curtis v. Kiley, ubi supra.*   There was testimony from several witnesses that the coal covered the sidewalk from the curbstone to the coal hole, and two others testified that it extended from the curbstone to the line of the defendant's house.   The accident occurred at a little before six o'clock on the evening of November 15, and there was testimony that it was dark, and that there was no daylight.   There was evidence from the plaintiff and from another witness who was present that they saw nobody about the coal hole before the accident.   One of the two men who were delivering the coal was in the wagon, from which he had just shovelled the last of the coal, and was busy with his team, and he did not see the plaintiff until she was being lifted out of the hole.   The other testified that he was about three feet from the coal hole, that he could not say what he was doing, that he thought his head was turned round looking up Eliot Street towards Tremont Street, which was in the direction opposite to that from which the plaintiff was coming.   He also said in his testimony, " I was not shovelling coal at that time; I was trying to keep myself on my feet.   There was a throng of people going up there each way."

Apparently the plaintiff was going as others were, except that they did not happen to step into the hole.   According to her testimony she had just come from Spain, and had never seen coal put into a cellar through a coal hole.   Eliot Street is travelled by many persons.   Besides the plaintiff, others might have been expected there who had never seen coal put in through holes in sidewalks.   The wagon was backed up to the curbstone and there were electric cars and teams passing through the street. I think that the jury well might have found that a coal hole on a public sidewalk, where a throng of persons was passing in each direction, was left open on a dark evening with coal scattered

about it from the curbstone to the side of the defendant's building, with a large two-horse wagon backed up against the curbstone, with nothing to indicate to pedestrians that there was an opening there, and with nobody to guard the hole or to warn them of danger. It seems to me that there was evidence of negligence on the part of those who left the hole open and unguarded.

What kind of conduct is required, under complex conditions, to reach the usual standard of due care, namely, the ordinary care of persons of common prudence, is a question of fact to be determined according to the observation and experience of common men. Even when there is no conflict of testimony, if there are acts and omissions of which some tend to show negligence and others do not, the question whether there was negligence or not is in my judgment a question for a jury. This proposition I deem to be established by such unanimity of decision as to need no citation of authorities in support of it. I think the case was rightly submitted to the jury.

Mr. Justice ALLEN concurs in this dissent.